## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## URBANA DIVISION

| | | |
|---|---|---|
| LATIF KHAN, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| v. | ) | **Case No. 06-CV-2234** |
| | ) | |
| EDWARD BLAND AND TOSHA | ) | |
| LESHURE, their individual capacities, | ) | |
| and HOUSING AUTHORITY OF | ) | |
| CHAMPAIGN COUNTY, and ALPHONSO | ) | |
| JACKSON, in his official capacity as | ) | |
| Secretary of the U.S. DEPARTMENT OF | ) | |
| HOUSING AND URBAN DEVELOPMENT,) | | |
| | ) | |
| **Defendants.** | ) | |

## OPINION

A jury trial in the above captioned case commenced in this court on February 2, 2009. At the close of Plaintiff's case on February 4, 2009, Defendants filed a Motion for Directed Verdict (#51) and moved for a directed verdict on all counts remaining in Plaintiff's Complaint (#1). Pursuant to Federal Rule of Civil Procedure 50(a), the court, for the following reasons, hereby GRANTS judgment as a matter of law for Defendants on all counts.

### PROCEDURAL BACKGROUND

Plaintiff filed his Complaint (#1) in the matter on December 11, 2006. In his Complaint, Plaintiff alleged that he was entitled to damages from Defendants for their violation of his due process rights under the Fourteenth Amendment and for a state claim of intimidation. Plaintiff, a

-1-

landlord, claimed that Defendants had improperly terminated existing Section 8[1] Housing Assistance Payment (HAP) contracts he had with the Housing Authority of Champaign County. Plaintiff also alleged that Defendants had debarred him from ever doing business with the Housing Authority's Section 8 program in the future. Plaintiff originally named as defendants (1) Edward Bland, Executive Director of the Housing Authority of Champaign County, (2) Tosha LeShure, manager of the Section 8 program at the Housing Authority of Champaign County, (3) the Housing Authority of Champaign County (hereinafter Housing Authority), and (4) Alphonso Jackson, in his capacity as Secretary of the United States Department of Housing and Urban Development (hereinafter HUD). Plaintiff listed seven counts in the Complaint, which were as follows:

Count I: 42 U.S.C. § 1983 Procedural Due Process Claim against Defendant Bland

Plaintiff claimed that Bland, acting pursuant to color of law, deprived Plaintiff of a valuable property right, i.e. his contracts with the Housing Authority and his expectancy to continue to contract in the future, without due process of law in violation of the Fourteenth Amendment to the United States Constitution. Plaintiff asked for compensatory and punitive damages.

Count II: Section 1983 Procedural Due Process Claim against Defendant LeShure

Plaintiff claimed that LeShure, acting pursuant to color of law, deprived Plaintiff of a valuable property right, i.e. his contracts with the Housing Authority and his expectancy to continue to contract in the future, without due process of law in violation of the Fourteenth Amendment to the United States Constitution. Plaintiff asked for compensatory and punitive damages.

---

[1]The Section 8 housing program is a program administered by the United States Department of Housing and Urban Development whereby low income tenants can rent properties they otherwise would not be able to afford. The tenants enter into an agreement where they pay what they can to the landlord and the landlord receives the balance of the rent from the federal government.

Count III: Substantive Due Process Claim against Defendant Bland

Plaintiff claimed that Bland's debarment of Plaintiff from doing business with the Housing Authority and HUD was done arbitrarily and capriciously, with malice towards Plaintiff to retaliate against Plaintiff for evicting a tenant who had violated his lease with Plaintiff.  Plaintiff claimed there was no adequate state law remedy against Bland for his actions in debarring Plaintiff and that Bland's actions constituted a denial of substantive due process in violation of the Fourteenth Amendment to the United States Constitution.

Count IV: Substantive Due Process Claim against Defendant LeShure

Plaintiff claimed that LeShure's refusal to allow tenants to remain in Plaintiff's houses, despite hardship, was done arbitrarily and capriciously, with malice towards Plaintiff, to retaliate against Plaintiff for evicting a tenant who had violated his lease with Plaintiff.  Plaintiff claimed there was no adequate state law remedy against LeShure for her actions in refusing to allow tenants to remain in houses owned by Plaintiff and that her actions constituted a denial of substantive due process in violation of the Fourteenth Amendment to the United States Constitution.

Count V: Intimidation Claim against Defendant Bland

Plaintiff claimed that Bland's threat to see that Plaintiff was criminally prosecuted for fraud if he contested his debarment of Plaintiff constituted intimidation as defined in 720 ILCS 5/12-6 of the Illinois Criminal Code.

Count VI: Section 1983 Due Process Claim against Defendant Housing Authority

Plaintiff claimed that Bland was in a position of making and enforcing policies on behalf of the Housing Authority and that his actions in terminating Plaintiff's contracts with the Housing Authority without due process and intimidating Plaintiff were the actions of the Housing Authority

by virtue of Bland's position with them.  Plaintiff claims the Housing Authority implicitly or explicitly ratified Bland's actions in terminating Plaintiff's contracts with the Housing Authority without due process and intimidating Plaintiff.  Further, the Housing Authority failed to adopt and enforce policies which would provide to persons who contracted with it, including Plaintiff, due process with respect to the administration and enforcement of its Section 8 housing program.

Count VII: Section 1983 Due Process Claim against HUD

Plaintiff alleged various procedural due process claims against HUD over the actions of the other Defendants.

On June 15, 2007, Defendant Alphonso Jackson, with the consent of Plaintiff and his attorney, moved the court to approve a stipulation dismissing Jackson from the litigation.  Magistrate Judge David G. Bernthal granted the motion via text order on July 3, 2007.  The three remaining Defendants filed their Answers (#18, 20, 22) to the Complaint on June 15, 2007.  On July 17, 2007, a Discovery Order (#28) was entered by Judge Bernthal setting the final pretrial date for January 23, 2009, with a jury trial set to begin on February 2, 2009.  No further action was taken by either party on the case until a status conference on December 15, 2008, where the jury trial dates remained in effect.  On January 23, 2009, the final pretrial conference was held and the final pretrial order (#31) was entered.  In the final pretrial order (#31), Plaintiff listed 16 different properties on which he claimed to have lost income for a total of $411,100 in lost income.  Plaintiff also claimed $50,444 in other related losses.  On February 2, 2009, a jury was selected and the case proceeded to trial the next day with opening statements.

As factual background, the dispute at issue has its origin in an eviction case between Plaintiff and a Section 8 tenant, Andrew Washington.  Washington rented an apartment at 1211 N. Market

Street, Champaign, Illinois, from Plaintiff under the Section 8 program.  Some time after leasing the apartment, Washington inquired of Plaintiff about renting the unit's basement as a storage space outside the Section 8 program.  Plaintiff claims he did check with the Housing Authority and was told he could rent the space to Washington.  After Washington failed to pay his rent, Plaintiff took Washington to small claims court and eventually was successful in getting Washington evicted.  Plaintiff claims this lead to the bad blood between himself and the Housing Authority, causing the confrontations with Executive Director Bland and the eventual termination of his Section 8 contracts.

THE TRIAL

Before trial began Plaintiff agreed to dismiss Count V of the Complaint, the intimidation claim.  The case proceeded to trial on Counts I, II, III, IV, and VI only.  The first witness called by Plaintiff was Mary Ann Midden.  Midden worked in the law firm where Plaintiff was a client.  Midden testified that Plaintiff had been having trouble with the Housing Authority since late 2005 because the HA did not like Plaintiff renting non-Section 8 property to a Section 8 tenant.  Midden had been asked by Plaintiff to accompany him to a meeting with Defendant Bland in early 2006.  Midden attended the meeting hoping to obtain a copy of the Section 8 rules to see what basis the HA had to be angry over the renting of the storage space to Washington.  Attending the meeting were Bland, Plaintiff, and Midden.  Bland explained Plaintiff could not have a side lease under his agreement with the HA or under HUD regulations.  Midden did not recall Bland showing her any documents or rules barring the side lease.

Midden testified that Bland believed the storage space was going to be used for occupancy and Plaintiff was trying to get more rent than he was allowed.  Midden described Bland as "firm,

resolute, and not hearing" Plaintiff or her.  Bland then had Plaintiff step out of the meeting and told

Midden that he did not want people like Plaintiff in the program because of the way he did business.

Midden asked what kind of process could Plaintiff use to appeal Bland's decision to terminate the

HAP contracts but Bland ignored her and said the Housing Authority could use the Inspector

General's office to have Plaintiff prosecuted for fraud.

On cross examination, Midden admitted that Bland allowed Midden and Plaintiff to speak.

On redirect, however, she testified that she did not have the chance to explain to Bland why she

thought the second lease was lawful.  At the end of the meeting, it was her understanding that if

Plaintiff pursued the matter, he would be investigated for fraud by the federal government.

Next to the stand was Tosha LeShure.  LeShure has been employed by the HA since March

2000 and has been Section 8 manager since April 2004.  She oversees the day to day processes of

the Section 8 program and is in charge of quality control.  She sent the March 28, 2006, letter to

Plaintiff as part of her duties as Section 8 manager.  The letter was admitted into evidence as

Plaintiff's Exhibit 5.  She was directed by Bland to send the letter.  The letter informed Plaintiff that

previous letters had been sent to Plaintiff's tenants, informing them of the termination of Plaintiff's

HAP contracts and that they would need to seek other places to live and be out of their current

properties by April 1, 2006.  The letter did say that for tenants for whom moving would be a

hardship, the HA would allow them to remain in their current units, as long as they were in habitable

condition.  LeShure testified that it was Bland who made the decision to terminate Plaintiff.  In early

2006 Plaintiff maintained four properties in the Section 8 program.

LeShure also testified as to how the Section 8 program worked.  The program allowed low

income families to rent units in the private market that were subsidized by the federal government.

The prospective program member must come to the Housing Authority for an eligibility determination. The HA has the tenant fill out documentation on family size and income. The amount of the subsidy paid by the government depends on household composition and income. Also, a Section 8 tenant's portion of the rent cannot exceed 40% of his income. For example, if a tenant has a monthly income of $1,000, his portion of the rent cannot exceed $400. Once approved, the tenant can look for a home and present the voucher to the landlord of the property they wish to rent. The landlord can then approve the lease and enter into a contract with the HA which makes the property in question a Section 8 property. Properties are only Section 8 properties when a Section 8 tenant is living there. The paperwork is then returned to the HA, where the landlord's rent is viewed with the tenant's information to determine affordability. Once that is determined, a Housing Quality Standards (HQS) inspection is ordered for the unit.

HQS inspections involve safety issues, such as floors, walls, outlets, plumbing, and furnaces. Once a unit passes an HQS inspection, coordinators send out a HAP contract to the landlord. HAP contracts outline who should be in the unit, responsibilities, and what is considered a breach of the HAP contract. The HAP contract is between the landlord and the Housing Authority. A HAP contract will say how long it runs, usually from the start of the lease date (between the tenant and landlord) to the end of the lease date. The HAP contract can be terminated for many reasons. A HQS inspection is mandatory every year and the unit must pass the inspection for the HAP contract to be renewed. If the HQS inspection is a failure, the HA can terminate the HAP contract.

LeShure attended the meeting between Bland and Plaintiff, where the issue was the eviction of Andrew Washington. LeShure said the second lease between Plaintiff and Washington was a red flag under the HAP contract, since any addendums to leases had to be approved by the HA. In

February 2006 a letters were sent out to notify tenants that HAP contracts with Plaintiff would be terminated as of April 1, 2006.  Leshure testified that a meeting was had around this time between Plaintiff, Bland, and attorney Jason Barickman, a meeting for which she was present.  LeShure described Bland as being "passionate" at the meeting.  She said afterwards she explained to Plaintiff that the HA cannot debar him from doing business with the HA, and only federal agencies can do that.  However, the HA can recommend debarment.  She told him not to worry about being debarred.  After this, the March 28, 2006, letter was sent to Plaintiff.

In order to re-certify at the end of the year, tenants must update all their information and document new household members and income changes.  If they do not re-certify, they can be terminated from the program.

Defendant's Exhibit 1 was then entered, which was a letter from LeShure to Plaintiff dated April 4, 2007.  The letter was sent in relation to a property at 504 North 5th Street in Champaign that Plaintiff had owned but later sold to his daughter.  Plaintiff had requested that the HA stop sending the subsidy rent checks to him and instead send them to his daughter in Houston.  In the letter LeShure thanked Plaintiff for his participation in the Section 8 program and welcomed his future participation so long as all areas of compliance were met.  The letter was not sent through certified mail.

LeShure testified that Plaintiff's subsidies were never stopped from March 28, 2006 through April 4, 2007.  She said the HA would have approved any new requests for units for Section 8 from Plaintiff after the March 28, 2006.  She said the letters sent to tenants about the termination of Plaintiff's HAP contracts were because those properties were not in compliance.

Next to the stand was Defendant Edward Bland, called, like LeShure, as an adverse witness.

Bland has been Executive Director of the Housing Authority since November 2003 and has been in the housing industry since 1971.  As Executive Director he reports to a Board of Commissioners. The HA is a public body that receives its funding from HUD.

Introduced during Bland's testimony was Plaintiff's Exhibit No. 4, a standard form HUD HAP contract.  It is a contract between the HA and the landlord.  Bland testified that landlords should get a copy of the HAP contract each time they rent to new tenants.  The HAP contract is only for a 12 month period and must be re-certified at 12 months.  The HAP contract can only really last for 12 months because of the necessary re-certification of tenant's incomes and the mandatory annual HQS inspections.  (However, the language in the HAP form contract does not actually limit the contract to 12 months, but rather says "The initial lease term must be for at least one year"). Section 10 of the HAP contract outlines possible breaches of the contract.  Notice of any such breach must be sent to a landlord in writing.  Bland did not send notice of a breach in writing to Plaintiff over the Washington situation.

On December 1, 2005, Bland called Plaintiff's attorney Jason Barickman to inform him that Plaintiff had breached Section 15(b) of the HAP contract, in that he had rented additional space to a Section 8 tenant outside of the program.  Bland did not need permission from the Board of Commissioners to terminate Plaintiff's HAP contracts.  A landlord can appeal to the Board, however, and a grievance process is in place for that appeal.  Bland has terminated other HAP contracts with other landlords and he is authorized to do so by HA policy.  Bland did not remember telling Plaintiff that he could not appeal and he does not remember any terminated landlords asking for a hearing before termination.  Bland is in charge of LeShure, he tells her do something, and she implements his orders through her subordinates.  In reference to the March 28, 2006 letter, Bland

did not consult with anyone before sending the letter. As to the April 4, 2007 letter, he was probably aware of it. It is not a policy decision to terminate people from the program. In Bland's estimation, Plaintiff was a "fair" landlord and appreciated his service.

On examination by his own attorney, Bland clarified the policy making procedure of the HA. The Board of Commissioners do have control over him as Executive Director. He can draft policy, but to be enacted it must go before the Board. Bland can write personnel and maintenance policies, but they must be approved by the Board. HUD regulations must be followed, but the HA is not a federal agency and not a part of HUD.

In December 2005 Bland had a meeting with Plaintiff over Washington's side lease where he informed Plaintiff of what he could and could not do. Bland said he had been concerned over prior complaints about Plaintiff, such as roof problems at his properties. Bland did tell Plaintiff that the federal government can debar him for having a side deal, but he did not say that he (Bland) had the authority to do so. Further, nothing about debarment was ever forwarded on to HUD or any other federal agency. Bland knows his decisions can be challenged and denied saying anything about fraud. Regarding the early 2006 meeting with Plaintiff and Midden, Bland let her talk and denied being combative. He never told her "don't challenge me on this decision" and never told her to not let Plaintiff come to the meeting.

In further testimony regarding the HAP contracts and re-certification, Bland stated that the HAP contract goes on for a year. Each year the Section 8 voucher holder can be denied re-certification. If re-certification is granted and the contract is renewed, then the property must pass the annual the HQS inspection. If it fails the HQS inspection, it can be terminated. If everything passes fine, the HAP can be extended for another 12 months.

-10-

Next to testify was Monique Green Hassan.  Hassan is currently an HA Section 8 client.  She was on the program in 2006 when she attempted to rent a house from Plaintiff at 703 Prairie Street.  She obtained the Section 8 voucher from the HA after dealing with Section 8 coordinator Pam Pressley.  The house at 703 Prairie was "nice and roomy."  She asked Pressley if she could rent the house from Plaintiff, but was told by Pressley that Plaintiff was an "undesired" person to rent from and that she could not rent from him.  Hassan informed Plaintiff of what Pressley had said about him.  This was in late 2006, after the March 28, 2006 letter terminating the contracts but before the April 4, 2007, letter seemingly welcoming Plaintiff into the Section 8 program.

Nancy Stone Johnson, who worked for the HA in the late 1990s into 2001 as a Section 8 housing inspector, testified that she knew Plaintiff as a Section 8 landlord.  Johnson inspected the 1211 N. Market Street address for Plaintiff.  One of that addresses's units was later rented by Andrew Washington.  Johnson testified that the basement that Washington wanted to rent could not be occupied as a living unit.  Plaintiff talked to Johnson about whether he could rent storage space to a Section 8 participant if it was not approved by Section 8, but Johnson testified she did not know what approval Plaintiff needed for such a rental.

Irma Harris testified that she had 10 years as Section 8 lead coordinator.  She reports to LeShure.  Her duties include taking care of the participants in the program and assigning tenants to coordinators.  Harris was told to send letters in early 2006 informing all of Plaintiff's tenants that his HAP contracts would be terminated.  She was not sure if the order came from Bland or LeShure.  She did not know why Plaintiff was being terminated.  Plaintiff's Exhibit No. 14 was introduced.  Exhibit 14 was a letter from Harris to Carol Dorsey, dated February 10, 2006.  The letter informed Dorsey that, effective March 31, 2006, the HA was terminating the HAP contract with her landlord,

Plaintiff, and that she may move to a new unit April 1, 2006.

Melody Decker testified that she is a current Section 8 participant who rented a house at 610 E. Vine Street from Plaintiff for 1 and 1/2 years back in 2005 and 2006.  She was satisfied with the housing.  She was told she had to move from the East Vine location.  She was sent a letter from Pam Pressley saying they were terminating Plaintiff's HAP contract for failure to do the necessary repairs.  A series of letters were entered during Decker's testimony relating to the termination of Plaintiff's HAP contract for the East Vine property:

Defendant's Exhibit 24: A letter from HA to Plaintiff and Decker, dated January 27, 2006, informing them of an HQS inspection scheduled for February 13, 2006.

Defendant's Exhibit 26: A February 14, 2006, letter from the Inspection Department to Plaintiff and Decker following the failure of the first inspection.  The letter informs that due to the first failure, a second inspection has been scheduled.

Defendant's Exhibit 27: A March 15, 2006, letter from Section 8 inspector James Carter to Plaintiff informing him of the termination of his HAP contract due to failure to make repairs and the unsafe condition of the property at 610 East Vine in Champaign.

Decker claimed that she had once before had to move for HQS inspection failure, but that Plaintiff had been more attentive to repairs than her earlier landlord.  She did not necessarily want to move from the property, but ultimately had to do so because of the HQS inspection failure. Decker began looking for a new house as soon as the East Vine property failed the first inspection.

Next to testify was Jason Barickman, who had represented Plaintiff at his small claims case against Andrew Washington.  Barickman met with Bland and LeShure in early 2006, but Plaintiff was not present.  Barickman thought that Bland's tone was such that he had an "agenda" and that

no amicable solution could come from the meeting.  Still, Barickman did not detect any animosity towards Plaintiff on Bland's part.  Bland said it was not possible for the contracts to not be terminated and that if Plaintiff continued to fight the contract termination, Bland would report Plaintiff's violations to HUD (Barickman could never figure out just what those violations were). Bland also said he would pursue criminal charges against Plaintiff at the federal level.  He did say he was able to talk to Bland at the meeting.

Admitted into evidence as Plaintiff's Exhibits 28 and 29, respectively, were then the HAP contracts for Eddie Jackson at 1105 W. Bradley in Champaign and Melody Decker at 610 E. Vine in Champaign.  The contracts in question however, were not the contracts in effect in early 2006, but rather the July 1, 2000 through July 1, 2001 contract in Jackson's case and the May 20, 2003 through April 30, 2004 contract in Decker's case.

Plaintiff himself then took the stand.  Plaintiff began investing in real estate in 1990, buying cheap houses so he could renovate them and rent them to pay for his children's college education. In 1993 he became a participant in the Section 8 housing program.  Plaintiff liked participating in the program because the payments from the government were on time and the tenants were good, motivated people.

Plaintiff purchased the property at 1211 N. Market Street in Champaign in November 2002. The house was modified into three apartments, with Plaintiff installing separate heating and water systems.  The basement of the property was not developed for human occupancy.  A Section 8 resident rented the upstairs apartment.  The downstairs unit was rented by Andrew Washington. Section 8 inspected the unit Washington rented and found it fit for habitation.  Washington then approached Plaintiff about renting space in the basement for his daughter to store various

belongings.  Plaintiff contacted Nancy Stone Johnson to confirm that he could rent a non-subsidized unit to a Section 8 resident, and Johnson confirmed that he could.

Plaintiff liked Washington as a person, but not as a tenant.  Washington had people living at the apartment who were not on the HAP contract and there was increased criminal activity around the property.   Admitted into evidence were then Plaintiff's Exhibit 23 (Washington's lease agreement for the apartment at 1211 N. Market Street B), 26 (lease for storage space in the basement, showing that Plaintiff charged Washington $250 a month in rent for the basement storage space), and 19 (November 5, 2005, letter from Plaintiff to Washington about the violations of the HAP contract).  Washington was also behind on rent.  Plaintiff let Washington out of his lease for the basement but still needed rent money for the housing unit.  As Washington refused to pay, Plaintiff began the eviction process against him.  Exhibit 18, Plaintiff's 5-day notice of termination of tenancy to Washington, was admitted. Plaintiff took Washington's eviction case to small claims court, where due to a technicality, the case was thrown out.   Plaintiff then obtained legal representation and Washington was evicted in December 2005.

On December 2, 2005, Bland contacted one of Plaintiff's attorneys and said he was going to cancel all of Plaintiff's HAP contracts because of the Washington eviction.  Plaintiff and attorney Midden then met with Bland over this matter.   Before Midden arrived at the meeting, Bland informed Plaintiff that he was terminating all of his contracts and barring him from doing business with the government and HA.  When Plaintiff asked what he had done wrong, Bland, without directly answering the question, told Plaintiff that if he contested the terminations, Bland would criminally prosecute him.  Bland called Plaintiff a greedy person and said he had debarred people before.  Bland said nothing about appeal rights.  Plaintiff claimed to be shocked and confused.

-14-

Plaintiff claimed not to be present at the meeting between Bland and Barickman. Plaintiff also claimed LeShure never told him that Bland could not debar him. Plaintiff further claimed that Barickman said he was almost attacked by Bland and that Bland would not let him speak. During Plaintiff's testimony it was established that at the time of the terminations in March 2006, Plaintiff had only four existing HAP contracts:

1) 1105 W. Bradley- Eddie Jackson and wife

2) 18 Hedge Court- Carolyn Hill

3) 504 N. 5th Street- Carol Dorsey

4) 610 E. Vine Street- Melody Decker

Plaintiff testified that he never received copies of the HAP contracts he signed with the HA. Plaintiff claimed that he never signed a new HAP contract every year, but rather that the old HAP contracts simply carried over. Plaintiff acknowledged that Jackson was terminated as a tenant on April 1, 2006. Once Jackson moved out Plaintiff lost money on the property and the new tenants were bad and the property was vandalized.

Plaintiff testified that Carolyn Hill's contract at 18 Hedge Court was never terminated and that she was allowed to stay. No damages were claimed. Carol Dorsey, who resided at 504 N. 5th Street, likewise was allowed to stay on the property. Plaintiff transferred ownership of the property to his daughter.

The only other terminated contract besides Jackson's was Melody Decker at 610 E. Vine. In February 2006 an inspection was done on Decker's home. Plaintiff sent one of his contractors, Chris Helmuth, to fix the problems listed in the inspection report. Still, it failed the HQS which under the terms of the HAP, opened the contract for termination. Plaintiff, however, claims the HA

-15-

did not follow its usual procedures.

On cross examination it was revealed that Plaintiff received money on the Dorsey apartment until Spring 2007, when the HA began paying the rent to his daughter.  Plaintiff also admitted to speaking with HA personnel, such as Irma Harris, throughout the latter half of 2006.  Plaintiff also testified that he did not sign the HAP contract for Melody Decker (Plaintiff's Exhibit 29) because he did not believe it to be a valid HAP contract.  Plaintiff's Exhibit 8 was also admitted, a June 11, 2007 statement from Arthur Orton, Director of Compliance with the HUD Departmental Enforcement Center in Washington DC, stating that no one named Latif Khan had ever been debarred from a HUD program.

Following Plaintiff's testimony, Plaintiff rested his case.  Finding that Defendant LeShure was essentially acting as an employee of Defendant Bland and made no independent decisions regarding termination based on her own authority, the court dismissed LeShure as a defendant, leaving only Bland and the HA.  Defendants then made a Motion for Directed Verdict (#51) (actually a motion for judgment as a matter of law pursuant to Fed. R. Civ. Pro. 50(a).

## ANALYSIS

Defendants' Motion (#51) moves for judgment as a matter of law on all counts.  For Counts I, II, and VI, which are based on procedural due process violations, Defendants argue that Plaintiff has failed to show a property interest and failed to prove a violation of procedural due process.  For Counts III, IV, and VI, which are based on substantive due process, Defendants argue that Plaintiff has failed to prove a substantive due process interest,  has failed to show a property interest, and failed to show a violation of substantive due process.  For the following reasons, we agree with Defendants and GRANT Defendants' Motion (#51) in full.

-16-

Counts I, II, and VI: Procedural Due Process

The Due Process Clause of the Fourteenth Amendment forbids a state from depriving any person of "life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.  "To demonstrate a procedural due process violation, the plaintiffs must establish that there is '(1) a cognizable property interest; (2) a deprivation of that property interest; and (3) a denial of due process." Hudson v. City of Chicago, 374 F.3d 554, 559 (7th Cir. 2004), citing Buttitta v. City of Chicago, 9 F.3d 1198, 1201 (7th Cir. 1993).

First, the court must look to the contracts claimed by Plaintiff that were not in existence at the time of the terminations: what Plaintiff calls his expectancy to contract- e.g. the contracts he would have had in the future but for his alleged debarment by Defendant Bland.

Although there are no cases from the Seventh Circuit directly on point, the court finds persuasive two unpublished cases from the Tenth Circuit Court of Appeals and the Southern District of Alabama.  In Roscoe v. City of Albuquerque, 25 F.3d 1058, 1994 WL 170762 (10th Cir. 1994), a landlord sued the city and HUD for alleged breach of contract and civil rights violations in connection with the city's decision to discontinue renewing its federally subsidized HAP contracts with him.  The Tenth Circuit determined that the contracts had not been terminated prior to their expiration, but rather the city had chosen not to renew them.  The court then found that "unless Roscoe had a contractual or statutory right to renewal, his claims for breach of contract and due process violations fail as a matter of law."  Roscoe, 1994 WL 170762, at *2.  The court concluded:

> "Roscoe essentially rests his claim of a property interest and of a breach of
> contract on his assertion that 'the [HAP contracts] have no provision for renewal nor
> do they expire.'  Appellant's Reply Brief (City) at 17.  The HAP contract, however,

-17-

clearly states that it expires at the conclusion of the lease on which it is based, or at the termination of the AHA's reimbursement contract with HUD."  Roscoe, 1994 WL 170762, at *3.

The Tenth Circuit found that the landlord had no property interest in the renewal of the HAP contracts.

In Selma Housing Development Corporation v. Selma Housing Authority, 2005 WL 1981290 (S.D.Ala. 2005), a property owner and manager, SHDC, received Section 8 assistance through the SHA.  After finding a number of violations of HUD regulations, the SHA sent a letter to the SHDC that it was in violation of its HAP contracts, and the next day sent SHDC another letter saying it would not renew the contracts when they expired.  SHDC sued, contending the SHA violated its rights to due process under 42 U.S.C. § 1983 by refusing to renew its HAP contracts.

The district court, Judge William H. Steele, concluded that SHDC had no protected property interest in the renewal of the HAP contracts.  The court, citing Roscoe v. City of Albuquerque, explicitly rejected the view that an owner may have a protected property interest in HAP contracts that a public authority elects not to renew.  The court held:

> "In this case, SHDC does not identify any provision of contract, federal law or state law that would in any way limit SHA's discretion in determining whether or not to renew HAP contracts.
>
> ***
>
> Thus, as a general proposition, neither the HAP contracts nor SHA's decision not to renew same implicates any vested property rights of SHDC."  Selma Housing Development Corp., 2005 WL 1981290, at *6.

-18-

Likewise, in the instant case, Plaintiff has no property interest in any future contracts or expectancy to contract.  It was not a violation of Plaintiff's due process rights that he was "debarred" from doing any future business with the HA, as he had no property interest in those future contracts or in contracts that were not "renewed" by the HA.

The court is now left to consider the HAP contracts that were in existence at the time of the terminations: 1) 1) 1105 W. Bradley- Eddie Jackson and wife; 2) 18 Hedge Court- Carolyn Hill; 3) 504 N. 5th Street- Carol Dorsey; and 4) 610 E. Vine Street- Melody Decker.  The Hedge Court and 504 N. 5th contracts of Hill and Dorsey are out, as the evidence at trial revealed those contracts were never terminated and Plaintiff continued to collect rent.  This leaves the court to consider the 1105 W. Bradley HAP contract of Eddie Jackson and the 610 E. Vine contract of Melody Decker.  However, at trial it was determined that the contract on the 610 E. Vine residence of Melody Decker had expired before the contract was terminated.  Further, evidence was admitted showing that the property was terminated due to failing an HQS inspection, which was allowed for under the HAP contracts.  Therefore, the only contract in which Plaintiff could have been said to have a cognizable property interest at the time of termination was the 1105 W. Bradley property of Eddie Jackson.

Defendants argue in their Motion that Plaintiff has failed to prove a violation of due process with regard to the 1105 W. Bradley HAP contract.  Essentially, Plaintiff has a breach of contract claim against Defendants for terminating his contract before the expiration of the contract term.  Before addressing this issue under procedural due process, it should be noted that there was no actual evidence presented that Plaintiff had an existing HAP contract for Eddie Jackson (or anyone, for that matter) in effect at the time of the terminations in March 2006.  All that was ever admitted into evidence were the HAP contracts for Jackson and Decker from 2000 and 2003.  Plaintiff

-19-

testified that he did not have the contracts and Defendants only provided the 2000 and 2003 contracts. This is likely a result of the parties failure to perform any meaningful discovery before trial. The only evidence or proof that the HAP contracts exist is the assertion of the Plaintiff and the seeming acceptance of that assertion by the Defendants.

In Gannett Fleming West, Inc. v. Village of Angel Fire, 375 F.Supp.2d 1104 (D.N.M. 2004), an engineering firm sued a municipality in state court, seeking payment for work performed on a proposed construction project. One of the claims was a federal claim under 42 U.S.C. § 1983, which the municipality used to remove to federal court. The federal claim alleged that the municipality deprived plaintiff of its property rights guaranteed under the Fourteenth Amendment without due process of law in violation of 42 U.S.C. § 1983.

The district court began its analysis by noting that the Supreme Court of the United States had held that a simple breach of contract claim does not give rise to a claim under § 1983. Gannett, 375 F.Supp.2d at 1108. Citing to Lujan v. G & G Fire Sprinklers, Inc., 532 U.S. 189 (2001), the district court wrote that where a state provides a remedy through a breach of contract suit in state court, there is no due process violation where a contract is not paid by the state. Gannett, 375 F.Supp.2d at 1108. The Supreme Court assumed that the state statutory scheme depriving contractors of payment constituted a property interest, but then held that it was an interest (unlike interests that require a pre-deprivation hearing to comport with due process) that can be fully protected by an ordinary breach of contract suit. The district court also cited to an Eighth Circuit case which held "'[I]t is well established that a simple breach of contract does not rise to the level of a constitutional deprivation.'" Gannett, 375 F.Supp.2d at 1109, citing Dover Elevator Co. v. Arkansas State University, 64 F.3d 442, 446 (8th Cir. 1995). The due process count was then

-20-

dismissed with prejudice.

In <u>Michalowicz v. Village of Bedford Park</u>, 528 F.3d 530 (7th Cir. 2008), a village fire inspector who was discharged brought a § 1983 action against the village, his employer, alleging that his pretermination and posttermination hearings were inadequate in violation of his due process rights.  The Seventh Circuit wrote that to state a procedural due process claim a plaintiff must allege (1) deprivation of a protected interest and (2) insufficient procedural protections surrounding that deprivation.  <u>Michaelowicz</u>, 528 F.3d at 534.  However, the court noted, "because the relevant constitutional question is whether sufficient state-law protections *exist*, not whether sufficient protections were *afforded*, '[a] complaint does not state a valid procedural due process objection ... if it does not include a challenge to the fundamental fairness of the state procedures.'"  <u>Michalowicz</u>, 528 F.3d at 534, quoting <u>Hamlin v. Vaudenberg</u>, 95 F.3d 580, 583 (7th Cir. 1996).  The Seventh Circuit concluded that Illinois law provided an adequate remedy and affirmed the district court's dismissal of the federal claim.  Referring to the state law remedy, the court wrote:

> "'[W]e should not reject [a state-law remedy as inadequate] unless the remedy... can readily be characterized as inadequate to the point that it is meaningless or nonexistent and, thus, in no way can be said to provide the due process relief guaranteed by the fourteenth amendment.'"  <u>Michalowicz</u>, 528 F.3d at 535, quoting <u>Easter House v. Felder</u>, 910 F.2d 1387, 1406 (7th Cir. 1990).

In the instant case, there was little if any evidence put on by the Plaintiff as to what the state remedy was with regard to contesting the Housing Authority's termination of his HAP contracts. Plaintiff was represented by counsel at the time of the termination (more than one attorney, it appears) and had ample opportunity to appeal his case.  Testimony indicates that the next step would

have been to appeal to the Board of Commissions of the Housing Authority. Either way, as the court

has concluded we are faced with a breach of contract action. Plaintiff can pursue an adequate state

court remedy for breach of contract. A breach of contract claim can be pursued in state court.

Plaintiff has provided no evidence otherwise. As a result, Plaintiff's procedural due process rights

have not been violated. Judgment as a matter of law is granted for Defendants on Counts I, II, and

VI.

Counts III, IV, and VI: Substantive Due Process

A plaintiff bringing a substantive due process claim predicated on a deprived property

interest must show (1) that the state's decision was arbitrary and irrational and (2) that the state

committed a separate constitutional violation or that state law remedies are inadequate. Contreras

v. City of Chicago, 119 F.3d 1286, 1295 (7th Cir. 1997).

In Taake v. County of Monroe, 530 F.3d 538 (7th Cir. 2008), the plaintiff brought suit in

federal court under § 1983 in an attempt to force the county into selling him a piece of land that he

argued they contractually agreed to sell him. He brought the claim under federal substantive and

procedural due process violations and state law breach of contract claims. Taake, 530 F.3d at 540.

In ordering dismissal of the federal case, the Seventh Circuit wrote:

"Our caselaw already explains that mere breaches of contract by the

government do not support substantive due process claims under the Constitution,

but we will explain it again, for the sake of future litigants who may think it a good

idea to bring regular state-law contract claims to federal court via § 1983. When a

state actor breaches a contract it has with a private citizen, and the subject matter of

that contract does not implicate fundamental liberty or property interests, the state

-22-

acts just like any other contracting private citizen[,] the proper tribunal to adjudicate issues arising from the contract (or alleged contract) is a state court, because contract law is a creature of state law." <u>Taake</u>, 530 F.3d at 542.

Here, Plaintiff is left with a breach of contract claim better suited to state courts.  The HA, a state actor, terminated Plaintiff's contract on the Eddie Jackson residence.  Plaintiff has made no showing of the violation of a substantive due process right.  Rather, he has a breach of contract claim, and mere breach of contract claims do not support substantive due process claims under the Constitution.  <u>Taake</u>, 530 F.3d at 542.  Therefore, Plaintiff's substantive due process rights have not been violated.  Judgment as a matter of law is granted for Defendants on Counts III, IV, and VI.

Plaintiff was given an opportunity to amend his Complaint (#1) to include a breach of contract claim, in which case this court would have kept jurisdiction and sent the breach of the Eddie Jackson contract issue to the jury.  However, Plaintiff declined to amend the Complaint so the case is over.

IT IS THEREFORE ORDERED:

(1) Judgment as a matter of law is GRANTED as to Counts I, II, III, IV, and VI.

(2) This case is terminated.

ENTERED this 18 day of February, 2009

s/ Michael P. McCuskey

MICHAEL P. McCUSKEY

CHIEF U.S. DISTRICT JUDGE